**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL J. CONN, M.D., on behalf of PATIENT CL,<br><br>                    Plaintiff,<br><br>         v.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, EMPIRE BLUE CROSS BLUE SHIELD, and NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS WELFARE FUND,<br><br>                    Defendants. | Case No. |

# COMPLAINT

By way of this Complaint, and to the best of his knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiff Michael J. Conn, M.D., on behalf of Patient CL ("Plaintiff"), brings this action against Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), Empire Blue Cross Blue Shield ("Empire"), and New York City District Council of Carpenters Welfare Fund (the "Plan Defendant") (together, "Defendants").

1. This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Defendants' under-reimbursement to Plaintiff for post-mastectomy breast reconstruction surgical services.

2. Empire was the claims administrator of the Plan Defendant, under which the Patient, CL, was the Plan beneficiary.

3. Under the Blue Card Program, which applied in this case, Empire was the Home Plan, and Horizon was the Host Plan.

1

4. Empire applied its own payment methodology, denied Plaintiff's appeal of the significant under-reimbursement of claims in this case, and imposed out-of-network patient responsibility liability on the Patient.

5. Patient CL was initially diagnosed with breast cancer. She underwent a bilateral mastectomy. On September 23, 2015, Dr. Conn performed the first stage of bilateral breast reconstruction surgery. On December 28, 2015, Dr. Conn performed the second stage of bilateral breast reconstruction surgery.

6. Dr. Conn does not participate in Horizon's network of contracted health care providers.

7. After each of these breast reconstruction surgeries, Plaintiff submitted invoices in the form of CMS-1500 forms as required to Horizon for a total amount of $116,000.00. Defendants reimbursed Plaintiff only $8,040.00, leaving an unreimbursed amount of $107,960.00, or 93% of the total amount.

## JURISDICTION

8. The Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction).

9. The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Defendants systematically and continuously conduct business in the State of New Jersey, and otherwise have minimum contacts with the State of New Jersey sufficient to establish personal jurisdiction over them.

10. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Horizon resides, is found, has an agent, and transacts business in the District of New Jersey, (b) Horizon conducts a substantial amount of business in the District of New Jersey, including marketing, advertising and selling insurance products, and insures and administers group

healthcare insurance plans both inside and outside the District of New Jersey; (c) Empire transacts business in the District of New Jersey through its Host Plan, Horizon, under the Blue Card Program and directly by sending appeal letters and other correspondence to its members in the State; and (d) New York City District Council of Carpenters Welfare Fund transacts business in the District of New Jersey by employing individuals in the State (including the Patient) and by providing health insurance to those employees who are plan participants and beneficiaries of its Plan.

11. Venue is also appropriate under 29 U.S.C. § 1132(e)(2), which requires that an ERISA plan participant has the right to bring suit where she resides or alleges that the violation of ERISA occurred.  Plaintiff alleges that Defendant violated ERISA within the District of New Jersey.

## PARTIES

12. Plaintiff Michael J. Conn, M.D., is a Board-certified Plastic Surgeon by the American Board of Plastic Surgery and the American Society of Plastic Surgeons.  Dr. Conn received his medical degree from Georgetown University School of Medicine.  He has been in practice for more than 20 years and specializes in breast reconstruction and other microsurgical procedures.  His principal office is in Teaneck, New Jersey.

13. Defendant Horizon Blue Cross Blue Shield of New Jersey is a health care insurance company with offices located in New Jersey and offers Blue Cross Blue Shield-branded health care insurance in the State of New Jersey.  It is the claims administrator for the Plan Defendant.

14. Defendant Empire Blue Cross BlueShield is a health care insurance company with offices located in New York City.

15. Defendant New York City District Council of Carpenters Welfare Fund is a self-funded welfare benefit plan.  Its principal office is 395 Hudson Street, New York, NY.

## FACTUAL ALLEGATIONS

### A.     The Blue Card Program

16. The Blue Card Program, in which each Blue Cross Blue Shield ("BCBS") company must participate, including Horizon and Empire, was the direct result of the practice of all the BCBS companies, under the direction of the Blue Cross Blue Shield Association ("BCBSA"), to engage in exclusive geographical market allocation. Under this practice, each BCBS company was allocated a specific geographic market to market health insurance. This practice continues today.

17. Horizon's allocated exclusive market is the State of New Jersey. Accordingly, it cannot offer health insurance in the State of New York (a portion of which is allocated to Empire).

18. Empire Blue Cross BlueShield's allocated exclusive market is the downstate counties of the State of New York. It cannot offer health insurance in any adjacent state or county. It cannot offer health insurance in the State of New Jersey.

19. These restrictions insulate Horizon and Empire against competition from each other in their respective exclusive geographic market areas.

20. As part of their mandatory agreement to participate in the Blue Card Program, Horizon and Empire commit that other than in contiguous areas (counties adjacent to their allocated geographical market areas), they will not contract, solicit or negotiate with providers outside of their allocated geographical market areas.

21. To make this mandatory agreement work, the BCBSA created Home and Host Plans.

22. The Blue Cross Blue Shield insurer in the exclusive geographical area through which the member is enrolled is the Home Plan. In this case, it is Empire. The Blue Cross Blue

Shield insurer located in the exclusive geographical area where the service is provided is referred to as the Host Plan. In this case, it is Horizon.

23. When a provider network is involved, Empire would rely on Horizon's network under the Blue Card Program, since Horizon is the Host Plan where the provider's services are provided. Empire would still look to Horizon to determine whether Dr. Conn was in Horizon's network. In this case, Dr. Conn was out-of-network with Horizon. As noted above, Empire was prohibited from contracting with Dr. Conn directly.

24. Under the Blue Card Program, Dr. Conn was required to and did bill Horizon, not Empire, since the surgical services were rendered in New Jersey. Under the Blue Card program, and in this case, Horizon was the agent of Empire.

### B. The September 23, 2015 First-Stage Breast Reconstruction

25. One in eight women in the United States have or will develop breast cancer. Their individual choices on how to treat their breast cancer – by a lumpectomy, mastectomy, chemotherapy, radiation, and subsequent breast reconstruction – go well beyond treating and removing the cancerous cells in their bodies because these choices must be based on their individual identities. Breast reconstruction is a choice, and once made, under federal law it must be fully covered.

26. Breast reconstruction is a federal mandate under the Women's Health and Cancer Rights Act ("WHCRA"), enacted in 1998, which requires that group health plans cover breast reconstruction procedures after a mastectomy. This law, codified at 29 U.S.C. § 1185b, states:

> (a) In general. A group health plan . . . shall provide, in case of a participant or beneficiary who is receiving benefits in connection with a mastectomy and who elects breast reconstruction in connection with such mastectomy, coverage for –
>
> > (1) all stages of reconstruction of the breast on which mastectomy has been performed . . . in a manner determined in consultation with the attending physician and the patient. Such coverage may be subject to annual

> deductibles and coinsurance provisions as may be deemed appropriate and as are consistent with those established for other benefits under the plan or coverage . . .

(d)  Rule of construction. Nothing in this section shall be construed to prevent a group health plan or a health insurance issuer offering group health insurance coverage from negotiating the level and type of reimbursement with a provider for care provided in accordance with this section.

27. Under 29 U.S.C. § 1185b(c), a "group health plan, and a health insurance issuer offering group insurance coverage in connection with a group health plan, may not (2) penalize or otherwise reduce or limit the reimbursement of an attending provider . . ." Under 29 U.S.C. § 1185b(d), a group health plan or insurer may negotiate with a provider. Therefore, under the WHCRA and the terms of the Plan the Defendants should have, but failed to, negotiate with Plaintiff to eliminate the balance bill and all other out-of-network patient liability amounts.

28. The WHCRA was enacted in October 21, 1998, not only because of horror stories of "drive-through mastectomies" where women were forced into four-hour out-patient mastectomy surgeries by their insurance companies to save money, but because of denials of coverage for breast reconstruction on the basis that such reconstruction was cosmetic. As Senator Snowe stated in committee:

> We have also found that breast reconstructive surgery is considered cosmetic surgery. Well, it is not. Forty-three percent of women who want to undergo breast reconstructive surgery cannot because it is deemed cosmetic. And that is wrong. Breast reconstructive surgery is designed to restore a woman's wholeness.

144 Cong. Rec. § 4644 at *4648 (May 12, 1998).

29. Accordingly, breast reconstruction was a covered service under Patient CL's Plan.

30. Because a woman must and does have a choice about her body, this includes the choice of what specialist she can trust for her breast reconstruction procedures. Breast reconstruction is a complex surgery. It involves the placement of a tissue expander in flaps that will become the reconstructed breasts. The tissue expander expands the skin and allows the

subsequent placement of the breast implant. The tissue itself that creates the flaps are harvested from other areas of the body, such as the upper back, the abdominal area, or the buttocks. This tissue is then shaped into symmetrical breasts and areolas and nipples are created. This is highly specialized surgery performed by plastic surgeons who are board-certified and who have completed a post-residency fellowship in plastic surgery and reconstructive surgery.

31. On September 23, 2015, Patient CL underwent the first stage of bilateral breast reconstruction at Englewood Hospital and Medical Center. This involved the placement of tissue expanders. Dr. Conn received prior authorization from Empire for this medically necessary procedure.

32. After performing this first-stage breast reconstruction surgery, Plaintiff submitted an invoice on a CMS-1500 form to Horizon, as required, for $67,500.00. The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount | Recoded |
|---|---|---|---|
| 19357-LT | $19,500.00 | $4,480.29 | 19357-50 |
| 19357-RT | $19,500.00 | $0 | |
| 15734-LT | $14,250.00 | $0 | |
| 15734-RT | $14,250.00 | $0 | |
| **Total** | **$67,500.00** | **$4,480.29** | |

CPT code 19357 is breast reconstruction. CPT code 15734 is a skin procedure. It is separately compensable. Empire under-reimbursed the procedure billed under CPT code 19357, and unlawfully bundled CPT code 15734 and CPT code 19357, resulting in its refusal to pay any amounts for CPT code 15734.

33. Plaintiff filed a first-level appeal concerning the amount of Defendant's reimbursement of Plaintiff's bill on July 1, 2016.

34. Empire denied this appeal in a letter dated July 15, 2016. It stated: "The claim processed at the maximum allowable amount as the provider is non participating with the member's contract." It further stated: "The claim was reimburse [sic] 250 percent of the National Medicare rate under schedule 354."

35. The Plan SPD does not specify that the Allowed Amount for non-participating providers is based on 250% of the Medicare rate. It states: "The Allowed Amount is the maximum charge the plan recognizes for any service and on which plan payments are based." The "maximum charge" is undefined.

36. On July 29, 2016, Plaintiff filed a first-level appeal concerning the amount of Defendant's reimbursement of Plaintiff's bill.

37. Empire denied this appeal in a letter dated September 8, 2016. It stated: "This claim was paid at the Maximum Allowed Amount available and no additional reimbursement is possible."

38. Plaintiff exhausted the Patient's administrative remedies.

### C. December 28, 2015 Second-Stage Breast Reconstruction

39. On December 28, 2015, Dr. Conn performed the second-stage breast reconstruction on Patient CL, shaping the breasts and inserting permanent breast implants after the tissue expander was deflated and removed. Dr. Conn received prior authorization for this medically necessary surgery.

40. Plaintiff submitted an invoice on a CMS-1500 form, as required, for $49,000.00. The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount | Recoded |
| --- | --- | --- | --- |
| 19342-RT | $24,500.00 | $3,560.10 | 19342-50 |
| 19342-LT | $24,500.00 | $0 | |

**Total            $49,000.00                    $3,560.10**

CPT code 19342 is breast reconstruction.

41. Defendants determined that the Allowed Amount for the December 28, 2015, surgery was $3,560.10, leaving an unpaid amount of $45,439.90.

42. Plaintiff filed a first-level appeal concerning Plaintiff's bill on July 1, 2016. Empire denied this appeal on July 14, 2016. It stated: "After further review of the above claim, we have determined that the charges for the services rendered have been processed correctly." It further stated: "Out of network reimburse [sic] 250 percent of the National Medicare rate under schedule 354." The existence of virtually identical language from Empire's denial of the first-level reconstruction appeal (including the typographic error in the appeal letter) demonstrates that the denial letter itself was boilerplate.

43. The Plan SPD does not specify that the Allowed Amount for non-participating providers is based on 250% of the Medicare rate. It states: "The Allowed Amount is the maximum charge the plan recognizes for any service and on which plan payments are based." The "maximum charge" is undefined.

44. Plaintiff filed a second-level appeal. Empire denied the appeal on September 8, 2016. It stated: "The claim processed at the Maximum Allowable Amount and no additional reimbursement is possible."

45. Plaintiff thereby exhausted the Patient's administrative remedies.

46. Patient CL assigned her payments to Plaintiff. The Assignment stated, in pertinent part:

> I hereby assign and convey to the fullest extent permitted by law any and all benefit and non-benefit rights (including the right to any payments) under my health insurance policy or benefit plan to Dr. Michael J. Conn . . . with respect to . . . bring any appeal, lawsuit, or administrative proceeding, for and on my behalf, in my name

against any person and/or entity involved in the determination of benefits under any insurance policy or benefit plan.

47.     Plaintiff received a Designation of Authorized Representative from Patient CL.  It stated, in relevant part:

> I hereby appoint as a Designated Authorized Representative each of my Providers and . . . lawyers (including the Law Offices of Cohen and Howard) . . . [including the] right of my Authorized Representative to pursue . . . litigation or otherwise under any Federal or State law with respect to payment for services provided by a Provider to me, including penalties, interest, and attorney fees.

48.     ERISA allows an Authorized Representative to bring litigation on behalf of a Plan Participant or Beneficiary of an ERISA Plan.

49.     Breast reconstruction was a covered service under Patient CL's Plan because it was mandated under the WHCRA.

50.     Notwithstanding this federal mandate, upon information and belief Horizon did not have any providers with admitting privileges at Englewood Hospital and Medical Center in its network who were qualified to perform the two-stage breast reconstruction surgery that was performed on Patient CL.

51.     Defendants' decision to assess the patient $107,960.00 in out-of-pocket costs for breast reconstruction surgeries that must be covered is not a coverage decision.  It is, instead, a decision forcing Patient CL to self-insure her own breast reconstruction surgery, in violation of the WHCRA.

### D.     Failure to Cover Breast Reconstruction under New Jersey Law

52.     It is also in violation of New Jersey law.  On May 3, 2013, the Commissioner of New Jersey's Department of Banking and Insurance ("DOBI") issued Bulletin 13-10 based on New Jersey statutes, noting that "It has come to the Department's attention that there have been recurring instances of the inability of patients to obtain in-network benefits for the services of non-

network surgeons performing breast reconstruction as part of the surgical procedure in which a mastectomy is performed.  In some cases, carriers have been declining patient requests to use out-of-network surgeons, asserting the availability of in-network surgeons.  However, the in-network surgeons frequently do not perform, or are not qualified to perform, the particular type of requested reconstructive surgery."

53. In this case, Defendants did not decline Patient CL's request to have Dr. Conn perform her breast reconstruction surgeries.  Rather, knowing that there was no in-network provider who could perform these surgeries, Defendants paid Plaintiff the out-of-network rate which forced Patient CL to self-insure her own breast reconstruction surgeries.

54. The DOBI Commissioner concluded that when an insurer in New Jersey did not have a breast reconstruction surgeon in its network, it should approve the use of an out-of-network specialist but ensure that its member receives this service at the in-network co-pay amount. This requirement ensures that a cancer patient under New Jersey law and with coverage under the WHCRA, as here, does not face ruinous balance bills simply by choosing an out-of-network specialist.

55. Defendants violated this law. Defendants should have ensured that Patient CL received her breast reconstruction surgery at the in-network level of patient responsibility.  Instead, Patient CL was charged out-of-network-level co-pays and faces balance billing.

### E.     Full and Fair Review under ERISA

56. 29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv).

> The notification shall set forth, in a manner calculated to be understood by the claimant -
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;
>
> (v) In the case of an adverse benefit determination by a group health plan -
>
> (A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

57. Defendants did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder. Defendants did not provide full and fair review to Plaintiff.

58. In its July 15, 2016, appeal denial letter, Empire stated: "The claim processed at the maximum allowable amount as the provider is non participating with the member's contract." Empire did not provide the specific reasons for the denial; refer to the specific plan provisions on which the determination was based; or describe the plan's review procedures.

59. In its July 14, 2016, appeal denial letter Empire stated: After further review of the above claim, we have determined that the charges for the services rendered have been processed correctly." Empire did not provide the specific reasons for the denial; refer to the specific plan provisions on which the determination was based; or describe the plan's review procedures.

60. In its September 8, 2016, appeal denial letter, Empire stated: "This claim was paid at the Maximum Allowed Amount available and no additional reimbursement is possible." Empire did not provide the specific reasons for the denial; refer to the specific plan provisions on which the determination was based; or describe the plan's review procedures.

61. In its September 8, 2016, appeal denial letter, Empire stated: "The claim processed at the Maximum Allowable Amount and no additional reimbursement is possible." Empire did not provide the specific reasons for the denial; refer to the specific plan provisions on which the determination was based; or describe the plan's review procedures.

62. Language from 29 C.F.R. § 2560.503-1(g) is excerpted, as required, in the Plan's SPD, as follows:

> **Notice of Decision on Review**
>
> The decision on any review of your claim (both before and after the voluntary third level of appeal) will be given to you in writing. The notice of a denial of a claim on review will state:
>
> ■ The specific reason(s) for the determination.
> ■ Reference to the specific plan provision(s) on which the determination is based.
> ■ A statement that you are entitled to receive reasonable access to and copies of all documents relevant to your claim, upon request and free of charge.
> ■ A statement describing the plan's voluntary appeal procedures and your right to obtain the information about such procedures.
> ■ A statement of your right to bring a civil action under ERISA following an adverse benefit determination on review.

63. Defendants provided none of these required statements in any of the appeal denial letters, including, for the second-level appeal denial letter, the statement of the right to bring an action under ERISA.

64. The required language also applies to adverse benefit determinations made in EOBs. When Empire issued EOBs for each of the lowered reimbursements at issue in this case, it failed to provide any explanation, much less the detailed explanation required by ERISA.

65. Through this failure, Defendants violated ERISA.

66. Under ERISA, upon a failure to follow the procedures set out in the Plan, as here, the claimant is deemed to have exhausted her administrative remedies.

67. Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

### F.  The Fiduciary Duties of the Plan Defendant

68. The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B) it must discharge its duties solely in the interest of Plan participants and beneficiaries like Patient CL. It cannot permit its claims administrator to make claims determinations that would violate the terms of its SPD.

69. In this case, the Plan Defendant breached its fiduciary duties under ERISA by permitting the Horizon and Empire to make coverage decisions for breast reconstruction for Patient CL, a beneficiary of the Plan, in violation of the Plan's SPD which covered breast reconstruction in accordance with the WHCRA, and by failing to provide the required language when it made adverse benefit determinations.

## COUNT I

### CLAIM AGAINST DEFENDANT HORIZON FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

70. Defendant Horizon is obligated to pay benefits to the Defendant Plan beneficiary in accordance with the terms of the Defendant Plan's SPD, and in accordance with ERISA. This obligation arises under the Blue Card Program, and under ERISA.

71. Defendant Horizon violated its legal obligations under this ERISA-governed Plan when it, together with Empire and as its agent, under-reimbursed Plaintiff for breast reconstruction surgeries provided to Patient CL by Plaintiff, in violation of the terms of the Plan SPD and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B), for failing to provide the SPD to the Plan beneficiary and Plaintiff, and for failing to provide for full and fair review.

72. Plaintiff submitted invoices to Defendant Horizon $116,000.00.

73. Defendant Horizon together with Defendant Empire determined that the Allowed Amount was $8,040.00, leaving an under-reimbursed amount of $107,960.00. Defendant thereby reimbursed 7% of the total amount.

74. Defendant Horizon acted as Empire's agent under the Blue Card Program. Plaintiff was required to bill all amounts directly to Horizon.

75. Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claims were originally submitted to Defendant Horizon. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant Horizon.

## COUNT II

### CLAIM AGAINST DEFENDANT EMPIRE FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

76. Defendant Empire is obligated to pay benefits to the Defendant Plan beneficiary in accordance with the terms of the Defendant Plan's SPD, and in accordance with ERISA. This obligation arises under the Blue Card Program, and under ERISA.

77. Defendant Empire violated its legal obligations under the Plan when it, together with Horizon, under-reimbursed Plaintiff for breast reconstruction surgeries provided to Patient CL by Plaintiff, in violation of the terms of the SPD and in violation of ERISA § 502(a)(l)(B), 29

U.S.C. § 1132(a)(l)(B), for failing to provide the SPD to the Plan beneficiary and Plaintiff, and for failing to provide for full and fair review.

78. Defendant Empire together with Defendant Horizon determined that the Allowed Amount was $8,040.00, leaving an under-reimbursed amount of $107,960.00. Defendant thereby reimbursed 7% of the total amount.

79. Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claims were originally submitted to Defendant Horizon. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant Empire.

## COUNT III

### CLAIM AGAINST NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS WELFARE FUND FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

80. Defendant Plan, which is self-funded, is obligated to pay benefits to Patient CL in accordance with the terms of the its SPD, and in accordance with ERISA.

81. Defendant Plan violated its legal obligations when it, together with Horizon and Empire, under-reimbursed Plaintiff for breast reconstruction surgeries provided to Patient CL by Plaintiff, in violation of the terms of the SPD and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B), for failing to provide the SPD to the Plan beneficiary and Plaintiff, and for failing to provide for full and fair review.

82. Defendant Plan is liable for Defendant Empire together with Defendant Horizon in determining that the Allowed Amount was $8,040.00, leaving an under-reimbursed amount of $107,960.00. Defendant Plan thereby reimbursed 7% of the total amount.

83. Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claims were originally submitted to Defendant Horizon. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant Plan.

## COUNT IV

### CLAIM AGAINST NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS WELFARE FUND FOR BREACH OF FIDUCIARY DUTY IN VIOLATION OF ERISA 404 § (A)(1)(B) AND 502 § (A)(3)

84. The Plan Defendant is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B) it must discharge its duties solely in the interest of the Plan and Beneficiary.

85. The Plan Defendant must act prudently with the care, skill, prudence, and diligence that a prudent fiduciary would use, and must ensure that it is acting in accordance with Plan documents, such as its SPD.

86. An ERISA fiduciary cannot fully delegate its fiduciary responsibilities to another entity. The Plan Defendant cannot fully delegate its fiduciary responsibilities to administer claims to a claims administer and be free of its fiduciary responsibilities under ERISA. It cannot, in this case, fully delegate its fiduciary responsibilities to administer claims to Empire.

87. As a fiduciary, the Plan Defendant owed Plaintiff a duty of loyalty and the avoidance of self-dealing. It cannot permit its claims administrator to make claims determinations that would violate the terms of its SPD.

88. The Plan Defendant breached its duty of loyalty and violated its fiduciary responsibilities to Plaintiff by failing to ensure that its claims administrator under the Blue Card Program was reimbursing Plaintiff according to the Plan Defendant's SPD. Instead, Defendant Empire and Horizon as agent for Empire under-reimbursed Plaintiff for two surgeries. These two surgeries were covered under the terms of the SPD and under the WHCRA.

89. In addition, the Plan Defendant failed to monitor and correct Horizon's and Empire's misconduct, despite the Plan Defendant's continuing fiduciary duty to do so.

90. Plaintiff seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which includes declaratory relief, surcharge, profits, and removal of a fiduciary that breached its duties.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendants as follows:

(a) Ordering Defendants to recalculate and issue unpaid benefits to Plaintiff;

(b) Ordering declaratory relief, surcharge, profits, and removal of the Plan Defendant for breach of its fiduciary duty and loyalty;

(c) Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

(d) Awarding prejudgment interest; and

(e) Granting such other and further relief as is just and proper.

Dated: January 7, 2020

/s/ Michael F. Fried
AXELROD LLP
354 North Fourth Avenue
Highland Park, NJ 08904
(732) 718-6171
mfried@axelrodllp.com

Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

Attorneys for Michael J. Conn, M.D., on behalf of Patient CL